1  MARK J. RICE (124934)
   MCNEIL, SILVEIRA, RICE & WILEY
2  55 Professional Center Parkway, Suite A
   San Rafael, CA 94903
3  Telephone: (415) 472-3434
   Facsimile:  (415) 472-1298
4
5  Attorneys for Use-Plaintiff
   GEO GROUT, INC.
6

E-filing

JCS

7
8              UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA
10
   UNITED STATES OF AMERICA for The        )  CASE NO. **08        1222**
11 Use and Benefit of:                     )
   GEO GROUT, INC., a California           )  **COMPLAINT FOR RECOVERY ON**
12 Corporation,                            )  **MILLER ACT PAYMENT BOND**
                                           )
13            Plaintiff,                    )
                                           )
14                                         )
   v.                                      )
15                                         )
   DICK/MORGANTI,  A JOINT                 )
16 VENTURE, also known as                  )
   DICK/MORGANTI/NIBBI,  A JOINT           )
17 VENTURE; AMERICAN CASUALTY              )
   COMPANY OF READING, PA, a               )
18 Pennsylvania Corporation; NATIONAL      )
   UNION FIRE INSURANCE COMPANY            )
19 OF PITTSBURGH, PA, a Pennsylvania       )
   Corporation; and DOES 1 through 25,     )
20 inclusive,                              )
                                           )
21            Defendants                    )
                                           )
22
23
24      GEO GROUT, INC, a California corporation (hereinafter referred to as "Use-Plaintiff")
25 complains and alleges as follows:
26      1.    This action is brought pursuant to and jurisdiction is conferred by Title 40, United
27 States Code, §§3131 – 3133.  Venue is with the court as the project was performed in San
28 Francisco, California.

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS

2.    At all times relevant herein, Use-Plaintiff was and now is a corporation duly organized under the laws of the State of California, with its principal place of business in San Mateo County, State of California. Further, Use-Plaintiff was and now is a contractor duly licensed by the State of California, holding California Contractor's State Licensing Board Nos. A696663, A, C-51, and D-30.

3.    At all times relevant herein, defendant AMERICAN CASUALTY COMPANY OF READING, PA (hereinafter "defendant AMERICAN") was and now is a corporation duly authorized under the laws of the State of Pennsylvania, and licensed to do business and is doing business in the State of California as a surety issuing bonds required by law or contract by the United States and various agencies within the jurisdiction of this court, and issued Miller Act Payment Bond Nos. 929256521 and 929264 with respect to this federal project, GS-091-02-KTC-002, GSA Building, San Francisco, California.

4.    At all times relevant herein, defendant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA (hereinafter "defendant NATIONAL") was and now is a corporation duly authorized under the laws of the State of Pennsylvania, and licensed to do business and is doing business in the State of California as a surety issuing bonds required by law or contract by the United States and various agencies within the jurisdiction of this court, and issued Miller Act Payment Bond No. 260161 with respect to this federal project, GS-091-02-KTC-002, GSA Building, San Francisco, California (the project).

5.    Use-Plaintiff is informed and believes and thereon alleges that at all times relevant herein defendant DICK/MORGANTI, a Joint Venture (also known as DICK/MORGANTI/NIBBI, a Joint Venture) (hereinafter "defendant DICK/MORGANTI") was and now is a joint venture of Dick Corporation and The Morganti Group.

6.    Use-Plaintiff is informed and believes and thereon alleges that at all times relevant herein DICK/MORGANTI, and/or DICK/MORGANTI/NIBBI, are entities whose form is unknown, having its principal place of business in the State of Pennsylvania was the general contractor.

## FIRST CAUSE OF ACTION

## (Payment on Miller Act Bond)

7.    Use-Plaintiff realleges and incorporates by reference herein paragraphs 1 through 6 above, as though fully set forth herein.

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS

8.     Defendant DICK/MORGANTI, and/or DICK/MORGANTI/NIBBI, as prime contractor, entered into a written contract with the United States of America, by and through the General Service Administration, GSA project No. NCA00049 (hereinafter the "Prime Contract"), by the terms of which defendant DICK/MORGANTI agreed to construct a project known as GSA Federal Building, located at 90 7th Street, San Francisco, California ("the Project").

9.     Use-Plaintiff is informed and believes, and thereon alleges that under 40 U.S.C. §§ 3131-3134, defendant DICK/MORGANTI, and/or DICK/MORGANTI/NIBBI, as principal, and defendants AMERICAN and NATIONAL, as sureties, executed and delivered a payment bond to the United States, whereby said defendants bound themselves jointly and severally for the purpose of allowing a joint action or actions against any or all of them and bound themselves in a sum of money equal to the contract price. A copy of said Payment Bond is attached, marked EXHIBIT 1 and made a part hereof by this reference.

10.     Thereafter, on or about June 27, 2006, defendant DICK/MORGANTI, pursuant to the prime contract, entered into a written subcontract with Use-Plaintiff to construct certain portions of the Project. Specifically, grouting work and materials at the Project. A copy of said Subcontract is attached, marked EXHIBIT 2 and made a part hereof by this reference.

11.     At various times between June 27, 2006 and June 7, 2007, Use-Plaintiff furnished materials and labor, pursuant to a written contract between Use-Plaintiff and Defendant DICK/MORGANTI and at the specific request of defendant DICK/MORGANTI, in the execution of the work required in the Prime Contract between defendant DICK/MORGANTI and the United States.

12.     Initially under said contract, defendant DICK/MORGANTI agreed to pay Use-Plaintiff an amount in excess of $10,000 for said grouting materials and labor. However, pursuant to change order(s) requested by defendants with which Use-Plaintiff provided said requested changes, the subcontract price was increased to approximately $11,785.00, other payments and credits.

13.     Use-Plaintiff has fully and completely performed all promises on Use-Plaintiff's part to be performed under its contract with defendant DICK/MORGANTI, and/or DICK/MORGANTI/NIBBI, and under the bond, all of the conditions precedent to performance on the part of defendants, and each of them, have occurred, except any that has been paid in full. Use-Plaintiff is entitled to payment in full.

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14.    Of the total contract price of $11,785.00 for materials and labor furnished by Use-Plaintiff to defendant DICK/MORGANTI, zero has been paid, leaving a principal balance of $11,785.00 remaining due, owing and unpaid to Use-Plaintiff.

15.    Use-Plaintiff last furnished labor, material, and services on the Project within the year immediately preceding the date this complaint was filed.

16.    A period of 90 days has now elapsed since Use-Plaintiff last provided labor, material and services to defendant DICK/MORGANTI.

17.    On or about June 7, 2007, and within 90 days from the date on which Use-Plaintiff last provided said labor, material, and services on the Project, Use-Plaintiff gave written notice, in the manner required by law to defendant DICK/MORGANTI that Use-Plaintiff had supplied said labor, material and services in the prosecution of the work, was owed the sum of $11,785.00 and demanded payment from defendant DICK/MORGANTI.  A copy of said notice is attached hereto as EXHIBIT 3 and incorporated herein by this reference.

18.    Under the payment bond executed between defendant DICK/MORGANTI and/or DICK/MORGANTI/NIBBI, and defendants AMERICAN and NATIONAL, defendants AMERICAN and NATIONAL are jointly and severally obligated to provide payment to Use-Plaintiff for work performed on the Project.  Accordingly, the failure of defendant DICK/MORGANTI to compensate Use-Plaintiff for the work performed and the materials provided therein, defendants AMERICAN and NATIONAL are obligated to pay Use-Plaintiff the amount set forth above.  The Bond provides for recovery of attorney fees incurred by this claimant.

WHEREFORE, the United States of America, for the use and benefit of Use-Plaintiff GEO GROUT, INC., prays for judgment against defendants, and each of them, as set forth in the prayer for relief herein.

**SECOND CAUSE OF ACTION**

**CLAIM FOR BREACH OF CONTRACT**

**(Defendants DICK/MORGANTI AND DICK/MORGANTI/NIBBI)**

19.    Use-Plaintiff refers to and incorporates, paragraphs 1 through 18 as though fully set forth herein, and further alleges:

20.    Between June 27, 2006 and June 7, 2007, Use-Plaintiff furnished materials and labor, pursuant to a written contract between Use-Plaintiff's predecessor-in-interest and defendant DICK/MORGANTI and at the specific request of defendant DICK/MORGANTI in the execution

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS

1    of the work required in the Prime Contract between defendant DICK/MORGANTI and the United

2    States.

3          21.     Use-Plaintiff has performed all conditions, covenants, and promises under the

     Agreement to be performed on its part except for those which have been waived, excused, or

4    prevented by defendant DICK/MORGANTI.

5          22.     In or around April 15, 2007, defendant DICK/MORGANTI breached the contract by

6    failing and/or refusing to pay Use-Plaintiff per the contract.

7          23.     As a result of defendant DICK/MORGANTI's breach of the contract, Use-Plaintiff

8    has suffered general damages in an amount currently unascertained but in no event less than

     $11,875.00, according to proof.

9
           24.     In or around February 12, 2008, Use-Plaintiff made demand on defendant

10   DICK/MORGANTI for the payment of its damages as set forth above, but defendant

11   DICK/MORGANTI has failed and refused, and still fails and refuses to pay the sum, and the whole

12   sum remains due, owing, and unpaid.

13   **THIRD CAUSE OF ACTION**

14   **REASONABLE VALUE/ACCOUNT STATED**

     **(DEFENDANTS DICK/MORGANTI, DICK/MORGANTI/NIBBI AND SURETIES)**
15
           25.     Use-Plaintiff refers to and incorporates, paragraphs 1 through 24 as though fully set

16   forth herein, and further alleges:

17         26.     At defendant DICK/MORGANTI's special request, Use-Plaintiff provided grouting

18   labor and materials, having an agreed and reasonable value of $11,785.00 in principal, which

19   remains due, owing, and unpaid. Said sum is invoiced to defendant DICK/MORGANTI without

20   objection and agreed to it, constituting an account stated.

     **REQUEST FOR JURY TRIAL**
21
           27.     Use-Plaintiff hereby requests a jury trial for the cause of action asserted herein.

22         WHEREFORE, Use-Plaintiff prays judgment against defendants, and each of them, as set

23   forth below.

24   **ON THE FIRST CAUSE OF ACTION:**

25         1.     Judgment against defendants, and each of them;

26         2.     Payment in the principal amount of $11,785.00, according to proof;

           3.     Interest at the rate of ten percent per annum from June 7, 2007;
27

28
COMPLAINT FOR RECOVERY ON MILLER ACT PAYMENT BOND

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS

1    4.    Costs of suit herein and reasonable attorney's fees;

2    5.    Any other and further relief as the Court may deem proper.

**ON THE SECOND CAUSE OF ACTION:**

3    1.    Judgment against defendants, and each of them;

4    2.    Payment in the principal amount of $11,785.00, according to proof;

5    3.    Interest at the rate of ten percent per annum from June 7, 2007;

6    4.    Costs of suit herein and reasonable attorney's fees;

7    5.    Any other and further relief as the Court may deem proper.

**ON THE THIRD CAUSE OF ACTION:**

8    1.    For judgment against defendants, and each of them;

9    2.    For general, special, compensatory and consequential damages in an amount

10   according to proof of $11,785.00, plus ten percent per annum interest from June 7, 2007;

11   3.    For costs of suit according to proof; and

12   4.    For such other and further relief as the Court deems proper.

13

DATED:        February 26, 2008        McNEIL, SILVEIRA, RICE & WILEY

14

15

16    By

17    MARK J. RICE
      Attorneys for Plaintiff GEO GROUT, INC.

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR RECOVERY ON MILLER ACT PAYMENT BOND

LAW OFFICES
OF
MCNEIL, SILVEIRA,
RICE & WILEY
AN ASSOCIATION INCLUDING
PROFESSIONAL CORPORATIONS

American Casualty Company of Reading, PA, Bond No. 929256521, 92921
National Union Fire Insurance Company of Pittsburgh, PA Bond No. 2601

| **PAYMENT BOND** (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) **August 13, 2002** | FORM APPROVED OMB NO. **9000-0045** |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

PRINCIPAL (Legal name and business address)
**Dick/Morganti/Nibbi, A Joint Venture**
1900 State Route 51
Large, PA 15025

TYPE OF ORGANIZATION (x one)
INDIVIDUAL ☐  PARTNERSHIP ☐
JOINT VENTURE ☒  CORPORATION ☐
STATE OF INCORPORATION

SURETY(IES) (Name(s) and business address(es))
**American Casualty Company of Reading, PA**
CNA Plaza, Chicago, IL 60685
**National Union Fire Insurance Company of Pittsburgh, PA**
70 Pine Street, New York, NY 10270

PENAL SUM OF BOND
| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 3 | 600 | 000 | 00 |

CONTRACT DATE: May 6, 2002
CONTRACT NO: GS-09P-02-KTC-0002

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | PRINCIPAL | | |
|---|---|---|---|
| SIGNATURE(S) | 1. Dick/Morganti/Nibbi A Joint Venture (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | John T. Sebastian, Corporate Vice President, Dick Corporation Authorized Representative of the Joint Venture | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

| | | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | American Casualty Company of Reading, PA Two Chatham Center, Pittsburgh, PA 15230 | STATE OF INC. PA | LIABILITY LIMIT $35,962,000.00 | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Jean Brooker, Attorney-in-Fact | 2. | | |

NSN 7540-01-152-8061
Previous edition not usable
EXPIRATION DATE 12-31-92
25-205
STANDARD FORM 25-A (REV. 1-90)
Prescribed by GSA — FAR (48 CFR) 53.228(c)

CORPORATE SURETY(IES) (Continued)

**SURETY B**

| NAME & ADDRESS | National Union Fire Insurance Company of Pittsburgh, PA 70 Pine Street, New York, NY 10270 | | STATE NY | LIABILITY LIMIT $280,997,000.00 | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. *(signature)* | 2. | | | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Jean Brooker, Attorney-in-Fact | 2. | | | |

**SURETY C**

| NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | | | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |

**SURETY D**

| NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | | | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |

**SURETY E**

| NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | | | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |

**SURETY F**

| NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | | | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |

**SURETY G**

| NAME & ADDRESS | | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | | | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporation executing the bond as sureties must appear on the Department of the Treasury's List of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)."

In the space designated "SURETY(IES)" on the face of the form insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety shall accompany the bond. The government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25 -A  (REV. 1-90) Back

RECEIVED

MAR 06 2007

DICK/MORGANTI

1 of 7

# SUBCONTRACT AGREEMENT

THIS AGREEMENT, made effective as of this 27th day of June, 2006 by and between Geo Grout, Inc., 265 S. Maple Ave., So. San Francisco, CA 94080. Attention: Eric Leong, Phone: 650-872-1556, Fax: 650-872-1558, hereinafter called the Subcontractor, and Dick / Morganti, Joint Venture, 1068 Mission Street, San Francisco, CA 94103, Attention: Francis T. Sarmiento, Phone: 415-532-1320, Fax: 415-532-1366, hereinafter called the Contractor.

For the consideration hereinafter named, the said Subcontractor covenants and agrees with the said Contractor as follows, to wit:

FIRST.    For the project known as: GSA Federal Building Project, located in San Francisco, CA, being constructed by Dick / Morganti, Joint Venture (Contractor) for GSA - General Services Administration (Owner), the Subcontractor agrees to furnish all necessary supervision, labor, material, services, equipment, machinery, tools, and any other items proper or necessary in the performance of the work herein undertaken by the Subcontractor to fully construct, perform and in every respect complete the following items of work: Waterproof grout installation, U/G Fuel Oil Tank Test Cores.

Scope of work specifically includes the following:

A.    The following terms and conditions specific to this scope of Work are understood and shall be complied with:

1.    The Subcontractor agrees to furnish all equipment, labor and materials and tools to install Sodium Silicate (PC9S) grout required to plug and seal core penetration thru the lower waterproof membrane and protection slab at the fuel oil storage tank.

2.    This Subcontractor will install PC9S grout thru and below the waterproof membrane core Penetrations and continue to inject PC9S material as the wall casings are removed to provide continuous fill of the void thru and between the protection slab and the floor slab.

3.    This Subcontractor is responsible for their own clean up including but not limited to removal of damage, waste materials and spoils from the project. All cost for removal and disposal will be the responsibility of the subcontractor.

4.    This Subcontractor will install PC9S grout in penetrations shown on Geo Grout, Inc.'s drawing #GGI-1.0 dated 01/03/07. Any additional penetrations required will be performed based on a unit price per hole.

5.    The prices for providing the required services are as follows.  These unit prices will not be subject to any escalation for the duration of the project:

   a)  Cost for area preparation and one time mobilization including demobilization.
       **$750.00 Unit Price**

   b)  Additional Mobilization not the fault of this subcontractor will be billed at a unit price with the approval of the project superintendent
       **$750.00 Unit Price**

   c)  Work will be performed during standard 8 hour shifts Monday thru Friday. Equipment and labor to complete the installation of PC9S grout per Drawing #GGI-1.0 will billed lump sum.
       **$4,250.00 Lump Sum**

   d)  Additional penetrations required by the contractor will be billed at a unit price per penetration. Consumed material to be priced separately per gallons installed.

   e)  This subcontractor's work will be performed during standard 8 hour shifts Monday thru Friday. Work performed beyond a standard 8 hour work day and including Saturdays and

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-198
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00069
COST CODE:
1 of 7

2 of 7

Standays, when required by the contractor, will be billed premium rate. The project superintendent prior to this subcontractor working premium hours will approve premium work and billing rates.

   f) Delays to the subcontractor caused by the contractor will be billed flat rate per hour and include all costs associated with equipment and labor. Work tickets require approval of the project superintendent. **$250.00 per hour**

   g) Sodium Silicate PCSS grout will be billed based on quantity of materials installed. PC/SS grout quantities to be submitted and verified on work tickets daily by the project superintendent. **$2.75 per gallon**

B.  The Subcontractor shall provide a responsible employee for attendance at meetings scheduled by Dick/Morganti within 24 hours of notification, in order to review work activities and coordinate work, resolve conflicts, and to satisfy the requirements of the Contract Documents.

C.  The total duration of services provided under this Subcontract It is specifically understood however, that this Contractor may terminate or suspend this Subcontract in whole or, from time to time, in part for the default of the Subcontractor or for the convenience of the Contractor.

This Subcontractor shall include all overtime required to perform the work, at the unit prices listed above.

D.  Contractor to provide:

   1.  Clean area to set up and store materials.

   4.  110-volt electricity

   5.  Adequate potable water supply for continuous use

   6.  Location of all subsurface utilities

   7.  Daily washout area for equipment

   8.  Permits and testing if required

This Subcontract Agreement specifically includes, but is not limited to the following:

   1.  All work and delivery shall be coordinated with the Project Manager/Superintendent.

   2.  A Certificate of Insurance will be supplied indicating coverage required in the Contract naming Dick Corporation/Morganti Group and the Owner as additional insured.

   3.  All applicable OSHA Standards must be strictly adhered to and any citations or subsequent penalties that are a result of noncompliance to these standards shall be the responsibility of this Subcontractor.

   4.  Subcontractor shall comply to all other requirements set forth in exhibits and attachments on payment and documentation.

The Subcontractor shall perform the described work in accordance with the terms and conditions of this Subcontract for the following sum: **Five Thousand and 00/100 Dollars plus materials consumed Not to exceed Ten Thousand 00/100 Dollars ($10,000.00)** unless authorized by DM superintendent or project manager in a timely manner without disrupting subcontractor's continuous workflow or subcontractor shall be entitled to additional compensation for additional mobilization.

Subcontractor's work shall be carried out and completed strictly in accordance with the Plans, Specifications, and all Contract Requirements governing this project and in full accordance with the terms and conditions, meanings, **FOR THE PROJECT KNOWN AS:**

GSA Federal Building, San Francisco
Subcontract Number 21058-198
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE:
2 of 7

3 of 7

and intent of the Contractor's Contract with the Owner (the "General Contract"), which Subcontractor warrants that it has independently investigated and understands. A copy of said General Contract is on file at the Contractor's Office and has been inspected by the Subcontractor, and a copy of the Contract Documents is available upon request. It is further agreed that the provisions of said General Contract, including, but not limited to, the General and Supplementary Conditions, the Specifications and Plans, all Contract Requirements, and the particular Specifications relating to the work of the Subcontractor, insofar as they are applicable, are hereby incorporated herein by this reference and are binding upon the Subcontractor.

SECOND    The Contractor shall pay the Subcontractor for the full and faithful performance of the work by the Subcontractor the sum stated in Article FIRST, which shall be paid as follows: one hundred (100%) of the value of work performed during any month which has been paid for by Owner, shall be paid by the Contractor within ten (10) days of receipt of payment by the Owner. Final payment shall be made within ten (10) days of receipt of final payment by the Owner. Periodic payments by the Contractor shall not be deemed to be an acceptance of any part of the Subcontractor's work and Contractor reserves its right to require Subcontractor to correct any defective work at any time. Subcontractor shall use Contractor's monthly requisition form, Attachment A, and Attachments B, C, C-1 and D if required by Contractor.

THIRD    The Subcontractor shall perform its work in accordance with the Contractor's schedule and shall diligently pursue the work in order not to delay, interfere or hinder the progress of the Contractor, Subcontractors, or other Prime Contractors. Subcontractor recognizes that time is of the essence in the performance of this Agreement. If the Subcontractor fails to diligently pursue the work, fails to pay any person or firm who supplied labor and/or materials to the project, or should the Subcontractor become insolvent or be placed in receivership or bankruptcy and if the Subcontractor shall fail to correct the situation within three (3) days after written notice is given to him by the Contractor, the Contractor may declare the Subcontractor in default and complete the Subcontractor's work with its own or other forces, charging the cost to the Subcontractor's account, along with a reasonable allowance for overhead and profit.

FOURTH    It is expressly UNDERSTOOD AND AGREED by and between the parties hereto that time is and shall be considered the essence of the contract on the part of said Subcontractor, and, in the event that the Subcontractor shall fail in the performance of the work to be performed under this Subcontract or the Subcontractor is otherwise responsible for the late completion of the project said Subcontractor shall pay unto said Contractor, as damages, all such actual damages or liquidated damages suffered by the Contractor by reason of such default.

FIFTH    The Subcontractor and its subcontractors, if any, shall cooperate with Contractor and other subcontractors on the premises and shall so carry on their work so that other cooperating subcontractors shall not be hindered, delayed, or interfered with in the progress of their work and so that all of such work shall be a finished and complete job of its kind.

SIXTH    The Contractor may add to or reduce the work to be performed hereunder, however, no extra work under this Contract will be paid for, unless agreed to in writing before the extra work is started. It is understood and agreed that any claims for extra work demanded by the Subcontractor arising from omissions and/or discrepancies in the Plans or Specifications shall not be binding upon the Contractor or honored by him except in the manner approved and paid for by the Owner. If there is a disagreement on the amount of the addition or reduction from the Contract price or whether or not the work is, in fact, extra work, the Subcontractor shall nevertheless proceed with the work and the determination of the Owner as to amount and entitlement shall be binding on the Subcontractor.

SEVENTH    The Subcontractor is solely responsible for the health and safety of its employees, agents, subcontractors, and other persons on and adjacent to the Work Site. The Subcontractor, however, shall take all necessary and prudent safety precautions with respect to its work and shall comply with ALL safety policies, programs and measures instituted by the Contractor and the Owner (including substance abuse testing) and with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property, including, but not limited to, the Code of Federal Regulations Title 29, Part 1926 and applicable portions of CFR 29, Part 1910 Titled "Occupational Safety and Health Standards." Subcontractor's work shall be carried out and completed strictly in accordance with the Contractor's Safety Plan which Subcontractor warrants that it has independently investigated and understands. A copy of said Safety Plan is on file at the Contractor's Office and has been inspected by the Subcontractor (A copy of the Safety Plan is available upon request). The Subcontractor shall submit for approval their substance abuse testing program. In FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-198
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA0049
COST CODE:
5 of 7

4 of 7

the absence of such a program, the Subcontractor agrees to comply with the Contractor's Program.

It is also agreed that the Subcontractor shall be responsible for supplying and implementing a safety program which provides for complete fall protection for all of its workers (including its subcontractors, erectors, agents, etc.) exposed to falls above six (6) feet. The Subcontractor is responsible for ensuring that this and all other safety policies/guidelines are incorporated into any subcontracts, or lower tier contracts, which it may enter into on this Project.

The Subcontractor shall assign a competent safety representative (s) who is certified both in first aid and CPR, (b) who is experienced and capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees and the public, and (c) who has authorization to take immediate corrective measures to insure the safety of the Subcontractor's work areas. The Subcontractor's safety representative shall submit a site specific safety plan to the Contractor for review prior to the commencement of any work activities on the project site. Subcontractor shall report within one (1) day to the Contractor any injury to any of the Subcontractor's employees including any injury sustained by an employee of the Subcontractor's subcontractors. In addition, an OSHA Form No. 101, "Supplemental Record of Occupational Injury and Illnesses" or equivalent and an accident investigation report shall be provided to the contractor in the event of an injury to an employee employed under this Subcontract.

As an expert in the Subcontractor's field of work, the Subcontractor's supervisor and safety personnel have sole control over all requirements for doing the work safely, and the Contractor is not responsible in any manner for the safety of the Subcontractor's work. If the Subcontractor fails to correct unsafe procedures, acts, or conditions within a twenty-four (24) hours of notification by the Contractor or any public authority, however, Contractor may (but has no contractual obligation to do so) correct the unsafe practice and backcharge the Subcontractor for these costs plus ten percent (10%) for overhead, ten percent (10%) for profit, and twenty percent (20%) for a "safety premium". This specifically includes but is not limited to the clean up of Subcontractor's construction debris and the replacement of standard railings or barricades removed by Subcontractor's employees. Conditions which constitute "imminent danger" to any employee will result in an immediate stoppage of work. No extension of time or additional compensation will be granted as a result of any stop order so issued. Repeated failures to correct unsafe practices will result in default and termination of that Subcontract without any further notice to the Subcontractor. In the event the Contractor receives a penalty from OSHA as a result of a violation of OSHA Standards by the Subcontractor and Contractor is cited under the multi-employer worksite rule, Subcontractor agrees to protect, defend, indemnify, and hold harmless Contractor from the imposition of any fines and/or penalties by OSHA.

EIGHTH    Using an Insurance Company satisfactory to the Contractor, the Subcontractor shall provide adequate Worker's Compensation and Employer's Liability insurance covering the Subcontractor's employees working on the Project and will provide General Liability, Umbrella Liability, and Automobile Liability insurance covering the Owner, Contractor, the Architect/Engineer, the Construction Manager, and any of their respective employees and agents (the "Additional Insureds"), and the general public in accordance with all insurance requirements of the General Contract and the provisions contained herein, whichever are more stringent.

The obligation of the Subcontractor is to provide such adequate insurance to protect the Subcontractor and the Additional Insured's from all risks and/or occurrences that may arise or result, directly or indirectly, from the Subcontractor's work or presence on the jobsite and all risks of injury to Subcontractor's employees, sub-subcontractors' employees, and other agents. This obligation is in addition to and shall not limit in any way the obligations assumed by the Subcontractor in Article Ninth or elsewhere in this Subcontract Agreement. This obligation shall not be avoided by allegations of contributory or sole acts, failure to act, omission, negligence or fault of the Additional Insureds. Each policy of insurance shall waive subrogation against the Additional Insureds. As such, each policy of insurance provided for herein, except Worker's Compensation, shall name the Contractor, Owner, the Architect/Engineer, and the Construction Manager as an additional insured under the policy, and each policy of insurance provided for herein shall be primary with no right of contribution against the Contractor, Owner, the Architect/Engineer, the Construction Manager or their insurers.

The policies described above shall be written on a comprehensive form and shall conform to the laws of the State in which the job is located. All of the insurance specified herein shall be taken out, maintained, and paid for by the Subcontractor as part of the contract price specified in Article First.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21050-190
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCAB0049
COST CODE: _____
4 of 7

Worker's Compensation insurance shall be in accordance with statutory requirements and Employer's Liability insurance shall be supplied with minimum limits of One Million Dollars ($1,000,000) each accident, One Million Dollars ($1,000,000) disease - policy limit, and One Million Dollars ($1,000,000) disease - each employee.

The General Liability insurance shall include the following coverages:

(1)  Broad Form Property Damage, including Completed Operations;
(2)  The deletion of XCU Exclusions when applicable to Subcontractor's operations;
(3)  Blanket Contractual Liability;
(4)  Personal Injury Coverage that includes

    (a)  false arrest, detention or imprisonment, or malicious prosecution,
    (b)  libel, slander, defamation, or violation of right of privacy, and
    (c)  wrongful entry or eviction or other evasion of right of private occupancy; and
(5)  Contractor's Protective Liability if any of the work is sublet; and

The General Liability Policy shall be written at a combined minimum limit of One Million Dollars ($1,000,000) each occurrence, Personal Injury and Advertising Injury minimum limit of One Million Dollars ($1,000,000) each occurrence, Products-Completed Operations minimum policy aggregate of One Million Dollars ($1,000,000) and a separate General aggregate of One Million Dollars ($1,000,000) applied on a Uper projectC basis. On any, each and all trucks, automobiles or vehicles owned, hired, and non-owned which are used by the Subcontractor in the performance of the work, the Subcontractor shall provide Automobile Liability insurance with a minimum single limit of liability of One Million Dollars ($1,000,000) Bodily Injury and Property Damage combined.

The Umbrella Liability Policy shall be written at a limit of Two Million Dollars ($2,000,000) and apply excess over the Employer's Liability, General Liability, and Automobile Liability primary policies. This policy shall be written to provide policy limits on a "per project" aggregate basis.

Before any of the Subcontractor's employees, sub-subcontractors' employees, and other agents do any of the work on the premises under control of the Contractor, Subcontractor shall furnish the Contractor with the Insurance Company's certificate that the required coverages have been provided and each certificate shall contain a provision whereby the Insurance Company shall notify the Contractor thirty (30) days prior to the expiration of any coverages contained therein. The certificates shall contain the date when each coverage expires and a specific confirmation that the Employer's Liability, General Liability and Automotive Liability policies (a) name the Contractor, Owner, the Architect/Engineer, and the Construction Manager as additional insureds and (b) meet the "primary insurance" and "per jobsite aggregate" requirements detailed above. The Subcontractor agrees that the coverage shall not be allowed to expire until the entire work is completed and accepted.

The Subcontractor shall also carry such additional insurance in connection with the performance of the work hereunder as Contractor or Owner may specify. Subcontractor will be compensated for such additional insurance provided it is purchased through an Insurance Company satisfactory to the Contractor. Subcontractor shall promptly furnish to the Contractor certificates evidencing any such additional insurance coverage.

If a loss to the Contractor or Owner caused by the Subcontractor is covered by a Builder's Risk insurance policy taken out by the Contractor or the Owner, the Subcontractor shall pay the deductible sum for that loss to the Contractor or the Owner. Any deductible amounts paid by Subcontractor are not subject to an annual aggregate or cap.

NINTH.      The Subcontractor shall protect, indemnify, hold harmless, and defend the Contractor, the Owner, the Architect/Engineer, the Construction Manager, and any of their respective employees and agents (the "Indemnitees") against any and all claims, causes of action, suits, losses, costs, or damages, including attorneys' fees, resulting from the acts, failure to act, omissions, negligence, or fault of the Subcontractor, those employed by it, or its agents, whether or not said claim, cause of action, suit, loss, cost, or damage is alleged to be caused in part by any act, failure to act, omission, negligence, or fault of any of the Indemnitees or their employees, and Subcontractor shall bear any expenses which any of the Indemnitees may have by reason thereof, or on account of being charged with such claim, cause of action, suit, loss, cost or damage, unless such claim, cause of action, suit, loss, cost, or damage is solely caused by the Indemnitee's sole act, failure to act, omission, negligence, or fault.
FOR THE PROJECT KNOWN AS:

GSA Federal Building, Sea Francisco
Subcontract Number 21055-198
GSA Contract No. GS-09P-82-KTC-0082
GSA Project No. NCA00049
COST CODE:
5 of 7

6 of 7

This general indemnification obligation is in addition to, and not a limit on, the insurance obligations of the Subcontractor. If there are any injuries to persons or damages to property that are unsettled when the work herein provided for is finished and for which coverage has been denied by Subcontractor's insurer, final payment between the Contractor and Subcontractor shall be deferred until such claims are settled or suitable special indemnity acceptable to the Contractor is provided by the Subcontractor. This general indemnification obligation shall apply particularly, but not exclusively, to the claims of any other subcontractor against any of the Indemnitees for the acts, failure to act, omissions, negligence, or fault of this Subcontractor, and this Subcontractor shall have no claim against the Indemnitees for the acts, failure to act, omissions, negligence, or fault of any other subcontractor except as outlined elsewhere in this Subcontract.

In any and all claims by any employee of the Subcontractor, anyone directly or indirectly employed by it, or anyone for whose acts Subcontractor may be liable, against any of the Indemnitee's, or any of their agents or employees, the indemnification obligation under this Article Ninth shall not be limited in any way by any limitation on the amount or type of damages or by the compensation or benefits payable by or for the Subcontractor under workers' or workmen's compensation acts, disability benefit acts, or other employee benefit acts.

TENTH.    The Subcontractor agrees to pay all assessments, contributions, taxes that may be applicable to the Subcontractor's work. The Subcontractor agrees to pay all of this laborers, material suppliers and equipment lessors for all work, material and/or equipment supplied to this project and Subcontractor shall indemnify and hold harmless the Contractor form any liens, claims, judgments, or suits that may be filed by such laborers, material suppliers and/or equipment lessors for the Subcontractor's failure to pay for work, materials and/or equipment supplied to the Subcontractor for this project.

ELEVENTH    Subcontractor is required to abide by applicable Federal, State and/or Local laws, rules, ordinances or regulations dealing with wage rates and conditions of employment, including, but not limited to, the Prevailing Wage Act of the State in which the project is located.

TWELFTH.    In the event that the Subcontractor fails to pay and discharge when due any bills of any kind or nature whatsoever incurred by said Subcontractor in fulfillment of this Subcontract, the Subcontractor hereby agrees to permit the Contractor to issue joint payment checks to the Subcontractor and any of the Subcontractor's equipment lessors, material suppliers, or anyone else to whom the Subcontractor owes money for this particular project. The Contractor will not be under any obligation, however, to issue joint payment checks, but may do so in the event that there is a reasonable likelihood that such obligations of the Subcontractor, as described above, may not be timely paid by the Subcontractor and/or could become the obligation of the Contractor under any surety bond issued by the Contractor or under the applicable mechanic's lien law.

THIRTEENTH. The Subcontractor's original invoices shall be submitted to Contractor's Accounting Department in Pittsburgh, Pennsylvania before the 25th of the month, with a copy to Contractor's Field Office. Invoices arriving later that the 25th of the month shall be held for the following requisition. Subcontractor will refer to the Subcontract Agreement Number referenced on the first page of this Agreement for the convenience of our Accounting Department when submitting invoices relative to the aforesaid project. Invoices for this Subcontract will not be allowed until material receiving reports have been filled out and forwarded to Contractor.

FOURTEENTH.    Subcontractor warrants and guarantees all work in full accordance with the provisions of the General Conditions of the General Contract, the other warranty and guarantee, tests and inspections, corrections, and removal or acceptance of defective work sections, and all other applicable sections of the Contract Documents.

FIFTEENTH.    Contractor is an Equal Opportunity Employer and its policy is that employment decisions be made without regard to race, religion, sex, national origin, age, veteran status, and non-job related handicap. Subcontractor is required to abide by applicable Federal, State and/or Local laws, rules, ordinances or regulations dealing with wage rates and conditions of employment.

SIXTEENTH.    If any one or more of the provisions contained in this Subcontract, for any reason, are held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Subcontract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 210458.198
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00069
COST CODE:
6 of 7

RECEIVED

MAR 06 2007

DICK/MORGANTi

7 of 7

SEVENTEENTH. The Subcontractor represents and warrants that any system, process or equipment that contains any software or firmware provided under this Subcontract shall be able to perform such calculations and properly exchange date and time data when used in combination with any system, process or equipment currently existing on the project.

EIGHTEENTH. This Agreement shall be governed by the Laws of the State in which the project is located and to part thereof shall be assigned or sublet without prior consent of the Contractor.

NINETEENTH. Choice of Law and Disputes. To the extent that any dispute, controversy, or claim arises under this Subcontract and a suit is initiated by either party, the suit shall be brought in and before the Court of Common Pleas of the Commonwealth of Pennsylvania, wherein exclusive jurisdiction shall lie. This agreement on jurisdiction/venue shall override any conflicting state statute and, for any such lawsuit, Subcontractor hereby waives any rights to assert any different jurisdiction/venue pursuant to a conflicting state statute. Not withstanding the above, If the Owner is joined by the Contractor in any such suit, Subcontractor hereby stipulates that it shall agree to move the suit to the venue of the project site and/or to the disputes resolution forum specified in the General Contract upon the request or motion of the Contractor.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first hereinabove written.

Geo Group, Inc.

Subcontractor

By _____

Representative of Subcontractor Authorized to Execute Subcontract

Title: _PRESIDENT_

Date: _2/28/07_

Witness: _____

DICK / MORGANTI, IV

Contractor

By _____

Title: _Project Manager_

Date: _4/11/07_

Witness _____

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-198
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE:
7 of 7

# MILLER ACT NOTICE

## ATTENTION:

Original Contractor:  Dick/Morganti, Joint Venture, 1068 Mission St., San Francisco, CA 94103

NOTICE IS HEREBY GIVEN that the undersigned claimant has not been paid in full, and intends to enforce his rights under the Miller Act.

1.   The kinds of labor, services, equipment, or materials furnished are:

Waterproofing grout installation

FOR JOB DESCRIBED AS:

General Services Administration, Federal Building Project, 90 7th Street, San Francisco, CA 94103

2.  The name of the party for whom the labor, services, equipment or materials were furnished is:

Dick/Morganti, Joint Venture

3.  The amount in value of the labor, services, equipment or materials furnished was:

     Liquidation                              $ 11,785.00 in principal

     Payments, credits and offsets are:     $ -0-

     Balance unpaid and amount of claim:    $ 11,785.00, plus 10% interest & attorney's fees

4.  The date on which the last of the labor, services, equipment or materials was furnished was:

     Less than 90 days before this Notice

June 7, 2007
(Date)

(415) 472-3434
(Telephone Number)

Geo Grout, Inc.
(Name of Firm)

(Signature of Claimant or Agency)
MARK J. RICE
Attorney and Agent
(Title)
55 Professional Center Parkway, Suite A
(Street or P. O. Box)
San Rafael, CA 94903
(City, State and Zip Code)

**MAIL BY REGISTERED - RETURN RECEIPT REQUESTED OR OTHER METHOD OF THIRD PARTY RECEIPT**

CERTIFIED MAIL™

PITNEY BOWES
$ 005.21⁰
02 1P     0002191282  JUN 07 2007
MAILED FROM ZIP CODE 94903

7006 2760 0003 3668 5589

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Dick/Morganti, Joint Venture
Attention: Rich Cotter
1068 Mission Street
San Francisco, CA  94103

LAW OFFICES
OF

MCNEIL, SILVEIRA, RICE & WILEY
AN ASSOCIATION INCLUDING PROFESSIONAL CORPORATIONS
55 PROFESSIONAL CENTER PARKWAY, SUITE A
SAN RAFAEL, CALIFORNIA 94903

CERTIFIED MAIL™

UNITED STATES POSTAGE
PITNEY BOWES
$ 005.210
02 1P    JUN 07 2007
0002191282
MAILED FROM ZIP CODE 94903

7006 2760 0003 3668 52

LAW OFFICES
OF
McNEIL, SILVEIRA, RICE & WILEY
AN ASSOCIATION INCLUDING PROFESSIONAL CORPORATIONS
55 PROFESSIONAL CENTER PARKWAY, SUITE A
SAN RAFAEL, CALIFORNIA 94903

CERTIFIED MAIL – RETURN RECEIPT
REQUESTED
General Services Administration
Attention: Shelita Harper
Federal Office Building
90 7th Street
San Francisco, CA  94103

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dick/Morganti, Joint Venture
Attention: Rich Cotter
1068 Mission Street
San Francisco, CA 94103

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _Jk Cusher_
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
_7-16-07_

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
*(Transfer from service label)*   7006 2760 0003 3668 5263

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

General Services Administration
Federal Office Building
Attention: Shelita Harper
90 7th Street
San Francisco, CA 94103

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _Walker_
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
_P. Walker_

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
*(Transfer from service label)*   7006 2760 0003 3668 5256

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540